UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RAYMOND LEMOND HARPER,

    Plaintiff,

v.                                      CAUSE NO. 3:22-CV-409-DRL-MGG

WILLIAM REDMAN *et al.*,

    Defendants.

OPINION AND ORDER

Raymond Lemond Harper, a prisoner proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Harper is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Harper is currently serving a sentence at Westville Correctional Facility. His claims stem from events occurring at the St. Joseph County Jail when he was incarcerated there as a pretrial detainee. According to the complaint and attachments, an incident

occurred at the jail on November 22, 2021, during which time approximately 20 inmates in the jail's "B-Pod" were being "unruly" and refusing to return to their cells as ordered by correctional officers. Mr. Harper was housed in the B-Pod, but he claims he was not one of these unruly inmates and that he returned to his cell as ordered. Nevertheless, jail staff were unable to gain compliance by the other inmates. After several orders were disregarded, Captain Zawitowski (first name unknown) ordered Corporal Gregory Donley to deploy chemical spray into the B-Pod. After two bursts of chemical spray, all of the inmates returned to their cells.

The following day, all inmates in the B-Pod were escorted to the segregation unit, including Mr. Harper. He was not dressed at the time and asked Sergeant Heath (first name unknown) if he could get dressed and put on his "shower shoes," but was told that he could not. He had to walk in his "long johns and socks" down the hall, which he felt was humiliating. During the move, guards wore riot gear and used canines to control the inmates. Mr. Harper felt such tactics were unnecessarily aggressive. The inmates in the B-Pod had disciplinary charges brought against them, including Mr. Harper, who was charged with "rioting or inciting a riot," "refusing a direct order," and engaging in "conduct which disrupts." (ECF 1-1 at 8.)

Later that day, Mr. Harper received his personal property and noticed that certain items were missing, including food, a Bible, a game of dominoes, pictures, and other items. He asked for help from the jail chaplain in finding the Bible, and the following day the chaplain "delivered it personally" to Mr. Harper's cell. His other belongings were not

recovered. He claims Mr. Woody (first name unknown) was the jail employee responsible for transferring his property and that he did a poor job.

As best as can be discerned, Mr. Harper remained in segregation for approximately a week.[1] During this time, he claims he was "refused clean/exchange of linen" and had to eat his meals on Styrofoam trays. He claims the Styrofoam trays had smaller portions than ordinary trays and that the food was "blended together." On December 1, 2021, the disciplinary charges against Mr. Harper were dismissed. Nevertheless, he finds it unfair that he was subjected to chemical spray and taken to the segregation unit because other inmates in his pod were being unruly. Based on these events, he sues Sheriff William Redman, Warden Russ Olmstead, Captain Zawitowski, Commander Andrew Finn, Corporal Donley, Mr. Swanigan (first name unknown), Sergeant Heath, and Mr. Woody, seeking monetary damages and other relief.

Because Mr. Harper is a pretrial detainee, his rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted). However, the Fourteenth Amendment prohibits "punishment" of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendant "acted

---

[1] He does not clearly allege how long he was in segregation but states elsewhere in his complaint that he is suing about events occurring "from November 22 to December 01, 2021." (ECF 1 at 1.) December 1, 2021, is also the date of the conduct adjustment board's decision dismissing the charges against him. (ECF 1-1 at 8.)

3

purposefully, knowingly, or perhaps even recklessly," and (2) the defendant's conduct was "objectively unreasonable." *Miranda*, 900 F.3d at 353–54. "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose[.]'" *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). In determining whether a challenged action is objectively unreasonable, courts must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). "[N]egligent conduct does not offend the Due Process Clause," and allegations of negligence, even gross negligence, do not suffice. *Miranda*, 900 F.3d at 353.

To establish an excessive force claim under the Fourteenth Amendment, the plaintiff must allege that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. 396-97. In determining whether force was objectively unreasonable, courts consider such factors as the relationship between the need for force and the amount of force that was used, the extent of any injuries the plaintiff suffered, and the severity of the security problem. *Id.* at 397.

Here, it is evident from the complaint and attachments that the chemical spray was used in response to a chaotic and dangerous situation involving 20 inmates who were out of their cells and refusing to obey orders. Jail officials are permitted to take steps to restore order in a facility, as "[i]nmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). The court also considers that prison officials must be afforded substantial deference on matters related to the safety and security of the facility. *Bell*, 441 U.S. at 547 ("Prison

4

administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Given the scenario Mr. Harper describes, he does not plausibly allege that prison officials violated the Fourteenth Amendment by using chemical spray to disperse the inmates who were engaging in a disturbance and refusing to return to their cells. Likewise, the fact that guards wore riot gear and had canines present to ensure an orderly move of these inmates cannot be considered "objectively unreasonable" under the circumstances Mr. Harper describes.

It is also not evident from the complaint how, if at all, Mr. Harper was personally injured by the chemical spray. Although he states that chemical spray generally causes "irritation to the skin, eyes, and respiratory system," he does not allege what symptoms, if any, he experienced or describe how long he experienced them. As to the use of the riot gear and canines, he does not allege any injury. Prison conditions in the abstract do not violate the Constitution unless the plaintiff shows some kind of harm attributable to that condition. *See Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012). The fact that he was not allowed to dress and put on shoes during the move is not the type of deprivation that would give rise to a constitutional violation. There is no indication from his allegations that jail staff made him strip off his clothing or walk naked; rather, it is evident from his allegations that he was simply required to move immediately in the clothing he was in when officers arrived. It can be discerned from his allegations that his feet and body were covered during the move, just not in the clothing of his choosing. The fact that officers did not want to permit a large group of inmates who had recently been involved in a

5

disturbance time and opportunity to rifle among their belongings before being taken to segregation cannot be considered objectively unreasonable under the circumstances.

He also complains about having to spend time in segregation, but it is evident from the complaint and attachments that all the inmates in the B-Pod were placed in segregation while an investigation into the disturbance was completed. He believes that no further action should have been taken once the unruly inmates returned to their cells, but substantial deference must be afforded to prison officials on matters related to safety and security. *Bell*, 441 U.S. at 547. Temporary segregation of inmates for security or managerial reasons does not amount to punishment. *See Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). It is also evident that once an investigation was conducted, Mr. Harper was exonerated from any wrongdoing and released from segregation.

He points out that a report authored by one of the correctional officers on November 22, 2021, stated that he was not one of the inmates who disobeyed orders to return to his cell. (ECF 1-1 at 1.) He believes that once this report was written, he was fully exonerated and should not have been taken to segregation in the first place. However, another officer's report authored around this time did not expressly state that Mr. Harper had not participated in the disturbance. (*Id.* at 2.) Given the deference that must be afforded to jail officials on matters of security, the court cannot plausibly infer that it was objectively unreasonable for prison officials to conduct a complete investigation into the incident before deciding which inmates were at fault. Although Mr. Harper claims that he kept telling jail officials he was not involved in the disturbance,

6

prison staff "are neither required nor expected to believe everything inmates tell them." *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014).

He also complains about the conditions in the segregation unit. "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.'" *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017) (citation omitted). It has long been recognized that detainees are entitled to "the minimal civilized measure of life's necessities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (citation omitted). Detainees are held in conditions that amount to punishment when they are not provided with "reasonably adequate" food, ventilation, sanitation, bedding, hygiene materials, and utilities. *See id.* As outlined above, to state a plausible claim under the Fourteenth Amendment, a pretrial detainee must allege that the defendant's conduct was objectively unreasonable in light of the totality of facts and circumstances. *Mays*, 974 F.3d at 819; *Miranda*, 900 F.3d at 353–54. The court cannot plausibly infer that having to eat on Styrofoam trays, being given smaller portions, eating foods that were "blended together," or not being given an exchange of linen[2] for approximately a week while an investigation into the group disturbance was conducted was excessive in relation to a legitimate non-punitive purpose. *Hardeman*, 933 F.3d at 824. During the time jail officials were trying to determine who among the inmates posed a security threat, limiting their access to hard food trays and personal items appears

---

[2] Mr. Harper does not clearly allege whether he is referring to bedding and towels or some other type of "linen." He also does not state that the food provided to him was inadequate to meet his nutritional needs, only that the portions were smaller than usual and that it was apparently served in an unappetizing manner.

"reasonably related to a legitimate goal" rather than "arbitrary or purposeless." *Bell*, 441 U.S. at 539.

He also complains about the loss of his personal property. He is understandably upset that certain personal items were lost, including photographs that had sentimental value, but there is nothing in his complaint to suggest that prison officials intentionally destroyed his property to punish him. Rather, he alleges that jail staff were careless or negligent in their handling of his property during the move. Negligent conduct does not offend the Due Process Clause. *Miranda*, 900 F.3d at 353. To the extent he wants compensation for his lost property, he has an adequate state post-deprivation remedy available and thus cannot pursue a federal due process claim. *See Higgason v. Morton*, 171 F. App'x 509, 512 (7th Cir. 2006) (Indiana Tort Claims Act precluded Indiana inmate's due process claim arising from the loss of property in his cell); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("[Plaintiff] has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

Therefore, the complaint does not state a claim upon which relief can be granted. In the interest of justice, the court will allow him an opportunity to amend his complaint if, after reviewing the court's order, he believes that he can state a plausible constitutional claim based on these events, consistent with the allegations he has already made under penalty of perjury. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018); *Luevano v. Wal-Mart*, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **August 15, 2022**, to file an amended complaint if he so chooses; and

(2) CAUTIONS him that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim upon which relief can be granted.

SO ORDERED.

July 19, 2022 	*s/ Damon R. Leichty*
	Judge, United States District Court