UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RAYMOND L. HARPER,<br>  Plaintiff, | )<br>)<br>) |
| v. | )  CAUSE NO.: 3:22-CV-409-JEM<br>) |
| ZAWITOWSKI,<br>  Defendant. | )<br>) |

**OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment [DE 34], filed by Defendant Assistant Warden Rachel Zawitowski on April 10, 2023. Raymond Lemond Harper, a prisoner without a lawyer, is proceeding in this case against Defendant Zawitowski "for damages in her personal capacity for subjecting him to excessive force on or about November 22, 2021, by turning off the water in his cell and denying him clean linens for two days to prolong the effects of chemical spray used to quell a disturbance." Screening Order p. 6 [DE 9]. Along with the motion for summary judgment, Assistant Warden Zawitowski provided Mr. Harper the notice required by Northern District of Indiana Local Rule 56-1(a)(4), attached to the notice was a copy of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1. [DE 37].

Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (1) a response brief; and (2) a Response to Statement of Material Facts, which includes a citation to evidence supporting each dispute of fact. The Court extended Mr. Harper's deadline to file this response until July 7, 2023. This deadline passed over three months ago, but Mr. Harper has not responded.

The Local Rules provide that responses to motions for summary judgement must be filed "within 28 days after the movant serves the motion," N.D. Ind. L.R. 56-1(b), and "[t]he court may

1

rule on a motion summarily if an opposing party does not file a response before the deadline." N.D. Ind. L.R. 7-1(d)(4). The trial court's interpretation and application of its Local Rules is subject to great deference. *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Cuevas v. United States*, 317 F.3d 751, 752 (7th Cir. 2003), *cert. denied*, 540 U.S. 909, 124 S. Ct. 282, 157 L. Ed.2d 197 (2003). In fact, a trial court has the authority to strictly enforce its Local Rules, even if summary judgment results. *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014); *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1108 (7th Cir. 2004); *Waldridge*, 24 F.3d at 921-22 (upholding the trial court's strict enforcement of local rules on summary judgment).

In turn, Rule 56(e) states that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). It further states that summary judgment, if appropriate, should be entered against a party who fails to respond as provided in the Rule. *See id*. Thus, summary judgment is appropriate if the non-movant does not respond and the "motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir.1994). Therefore, the Court will now rule on Assistant Warden Zawitowski's summary judgment motion.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a

properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Because Mr. Harper was a pretrial detainee at the time of these events, his rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons," *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted), but the Fourteenth Amendment prohibits "punishment" of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendant's conduct was "objectively unreasonable." *Miranda*, 900 F.3d at 353–54. "[N]egligent conduct does not offend the Due Process Clause[.]" *Id.* at 353. Thus, to establish an excessive force claim under the Fourteenth Amendment, the plaintiff must provide evidence that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. 396-97. In determining whether a challenged action is objectively unreasonable, courts must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020).

Assistant Warden Zawitowski provides an affidavit in which she attests to the following facts.[1] On November 22, 2021, correctional officers attempted to lock down the B7 housing unit. Locking down the unit means ordering all inmates to enter their cells, shut their doors, and allow their doors to be locked. An inmate is required to lock down any time he is ordered to do so. An

---

[1] Because Mr. Harper did not respond to Assistant Warden Zawitowski's summary judgment motion, the Court accepts the facts alleged in her affidavit as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . .").

inmate can interfere in the lock down process by refusing to enter his cell, entering the cell but refusing to shut the cell door, or placing something in the cell door to prevent it from being locked by the control tower. Correctional officers made several announcements for the inmates in the B7 housing unit to lock down, but more than half of the inmates refused to do so. Instead, the inmates began pacing back and forth in the dayroom and placing shirts and rags over their faces in preparation for a standoff with jail staff. The correctional officers attempting to lock down the B7 housing unit radioed other officers for assistance. At this point, Assistant Warden Zawitowski ordered the water to be shut off to the B7 housing unit. This is done for several reasons: (1) to warn inmates of a further escalation of force and motivate them to comply; (2) to ensure inmates will not use the water to wet the floor and create a dangerous situation; and (3) to ensure the inmates cannot use the water to dilute the OC spray[2] and limit its effectiveness.

Once inmates had been resisting the lock down orders for over thirty minutes, and all attempts to deescalate the situation were exhausted and failed, Assistant Warden Zawitowski ordered OC spray to be used in the housing unit. [DE 36-1 at 4]. Mr. Harper was in his cell when the OC spray was administered. Six minutes later, a second burst of OC spray was dispensed due to some inmates continuing to refuse to lock down. Mr. Harper was still inside of his cell. After the second burst of OC spray, Assistant Warden Zawitowski activated the Detention Response Team ("DRT") to assist in locking down the remaining inmates. At this time, several inmates went inside their cells, but still continued to refuse to entirely shut their cell doors so they could be controlled from the control tower. By the time the DRT arrived at the jail, all inmates had been secured in their cells. The DRT performed a formal headcount and removed one inmate from the

---

[2] OC spray is oleoresin capsicum spray, commonly called pepper spray, a product containing the compound capsaicin as the active ingredient that irritates the eyes to cause burning and pain sensations.

housing unit. At no point did Mr. Harper show any sign of a medical issue or make any complaint to the deputies. Neither party provides any evidence regarding when the water to the B7 housing unit was turned back on.

The next day, on November 23, 2021, an inmate in the B7 housing unit attempted to leave his cell and became aggressive with deputies. Assistant Warden Zawitowski again activated the DRT in order to have all inmates in B7 moved to G8, a lock down unit. All inmates were instructed to pack up their belongings, removed from their cells one at a time, and escorted to their new cell assignments in G8. Each inmate, including Mr. Harper, was dressed out of his B7 uniform and given an orange uniform, the dress code required for the G8 lock down unit. Additionally, new linens were provided to each inmate. At no time did Mr. Harper request medical attention or complain of any injury related to the administration of OC spray or not receiving a new uniform or linens.

In this case, no reasonable jury could conclude Assistant Warden Zawitowski purposefully or knowingly used force against Mr. Harper that was objectively unreasonable. Specifically, Assistant Warden Zawitowski's decision to turn off the water and administer OC spray on November 22, 2021, was reasonable, as it was intended to overcome the inmates' refusal to lock down and restore order in the housing unit. *See Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (holding, in the context of an Eighth Amendment excessive force claim, that the plaintiff must show the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm"). It is undisputed that Mr. Harper was in his cell on both occasions OC spray was administered in the dayroom, and that he never requested medical attention or new linens or complained of any injury related to the administration of OC spray to any member of prison staff. There is thus no evidence that Assistant Warden Zawitowski or any

5

other member of prison staff knew Mr. Harper was suffering adverse effects from the administration of OC spray. The next day, Mr. Harper was escorted to the G8 lock down unit and provided a new uniform and fresh linens. There is no evidence Assistant Warden Zawitowski knew Mr. Harper required medical attention, a new uniform, or fresh linens prior to that time. Thus, even assuming it was unreasonable for Assistant Warden Zawitowski not to provide Mr. Harper with medical attention and a fresh uniform and linens immediately after the administration of OC spray, there is no evidence by which any reasonable jury could conclude her conduct was anything more than negligent. Summary judgment is therefore warranted in her favor.

For these reasons, the Court:

(1) **GRANTS** Assistant Warden Zawitowski's summary judgment motion [DE 34]; and

(2) **DIRECTS** the clerk to enter judgment in favor of Assistant Warden Zawitowski and against Raymond Lemond Harper.

SO ORDERED this 23rd day of October, 2023.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record
      Plaintiff, *pro se*